**COMMONWEALTH OF PENNSYLVANIA,**
Appellant,

v.

**William B. RICHARDSON, Appellee.**

Superior Court of Pennsylvania.

Submitted July 23, 2001.

Filed Aug. 31, 2001.

J. Karen Arnold, Asst. Dist. Atty., Bellefonte, for Commonwealth, appellant.

David Crowley, Bellefonte, for appellee.

Before: CAVANAUGH, JOHNSON, and HESTER, JJ.

HESTER, J.

¶ 1 The Commonwealth appeals from October 3, 2000 order dismissing the charges against William Richardson, Appellee, and discharging him. We affirm.

¶ 2 The undisputed facts, taken from the trial court opinion, are as follows.

1. On January 13, 1982, Defendant was sentenced to two (2) to five (5) years for Involuntary Deviate Sexual Intercourse, and an additional two (2) to five (5) years for rape, to be served consecutively.

2. The effective date of Defendant's aggregate sentence of four (4) to ten (10) years was September 2, 1981.

3. Defendant was paroled on the above sentence on March 12, 1986.

4. On September 6, 1986, Defendant was arrested for homicide.

5. On June 11, 1987, Defendant was convicted of involuntary manslaughter and sentenced to a prison term of five (5) to ten (10) years.

6. Defendant was thereafter recommitted as a convicted parole violator effective February 2, 1988, with a new maximum date of sentence on Defendant's Involuntary Deviate Sexual Intercourse/Rape sentence of July 15, 1993.

7. Defendant maxed out on his Involuntary Deviate Sexual Intercourse/Rape conviction on July 15, 1993.

8. On August 26, 1993, Defendant was paroled on the Involuntary Manslaughter sentence.

9. Defendant was recommitted on a technical parole violation on the Involuntary Manslaughter sentence on March 6, 1996, and remained incarcerated until the maximum sentence for the Involuntary Manslaughter was served on August 7, 1998.

10. On August 24, 1995, "Megan's Law" was enacted, requiring certain criminal offenders to register their addresses for a period of ten (10) years.

11. On August 28, 1998, Defendant was read the registration requirements pursuant to Megan's Law relating to reporting with respect to Defendant's Involuntary Deviate Sexual Intercourse and Rape conviction, and Defendant signed his acknowledgment of this requirement.

12. After May of 1999, Defendant failed to report his address to the Pennsylvania State Police.

Trial Court Opinion, 10/3/00, at 1–2.

¶3 In May 1999, Appellee moved from his last reported address in State College to another address in State College and then to Philadelphia, where he was arrested and charged with failure to make the required notification of address changes to law enforcement as required under 42 Pa. C.S. § 9793.[1] Appellee filed a pretrial motion on June 21, 2000, contesting the applicability of that section to him. On October 3, 2000, the trial court granted Appellee relief and dismissed the charges. The Commonwealth filed this timely appeal.[2]

¶4 The Commonwealth frames its argument as follows:

Whether Appellee, who had convictions for rape and involuntary deviate sexual intercourse for which his maximum sentence expired on July 15, 1993, and who was incarcerated in a state correctional institution for another offense at the effective date of the statutory provision at issue, April, 1996, and continuously thereafter until he completed that sentence in September, 1998, was (and is) required to register under 42 Pa.C.S. § 9793 of Megan's law for a 10–year period subsequent to his release.

Appellant's brief at 4. It is uncontested that Appellee finished serving his sentence for involuntary deviate sexual intercourse and rape on July 15, 1993; Megan's Law was enacted October 24, 1995, and took effect 180 days later, on April 24, 1996. Thus, Appellee's sentence for his sex convictions expired more than two years *before* the enactment of Megan's Law and almost three years *before* its effective date.

¶5 The Commonwealth argues that 42 Pa.C.S. § 9793 is applicable as long as the defendant was incarcerated at the time Megan's Law went into effect, irrespective of the underlying offense, and he had a

---

1. 42 Pa.C.S. § 9793 was repealed on May 10, 2000, effective July 9, 2000. That section subsequently was amended on December 20, 2000, effective February 18, 2001, as § 9795.1. The instant case concerns whether Appellee was required to register under former § 9793. Although it appears Appellee is required to register under § 9795.1(b)(2), we expressly make no finding in this regard.

2. Appellee filed a motion to quash the Commonwealth's appeal since the docket sheets mistakenly indicate that the appeal was filed more than thirty days after the trial court's order granting Appellee relief. In fact, the appeal was filed timely with the Centre County Clerk of Courts. The Commonwealth has filed a motion for attorneys' fees in response to Appellee's motion.

prior record in which a Megan's Law offense was committed.

¶ 6 The statute provides in pertinent part as follows:

**§ 9793. Registration of certain offenders for ten years**

**(a) Registration.**—*A person convicted of any of the offenses set forth in subsection (b) shall be required to register a current address* with the Pennsylvania State Police upon release from incarceration, upon parole from a State or county correctional institution, upon the commencement of a sentence of intermediate punishment or probation or *where the offender is under the supervision of the Pennsylvania Board of Probation and Parole at the time of enactment of this section . . .*

42 Pa.C.S. § 9793 (emphases added).

▆▆▆ ¶ 7 The esteemed Judge Thomas King Kistler held that this section was not applicable to Appellee since his sentences for involuntary deviate sexual intercourse and rape fully were served approximately three years prior to the statute's effective date. The Commonwealth asserts this was error. Thus, the issue we are confronted with is whether 42 Pa.C.S. § 9793 applies to all offenses in which a person currently is under the supervision of the Board of Probation and Parole ("Board") or under the supervision of the Board for a Megan's Law offense. Our standard of review is well-settled:

A trial court's application of a statute is a question of law, and our standard of review is plenary. *See Commonwealth v. Taylor,* 746 A.2d 626 (Pa.Super.2000). Furthermore, as this matter involves only a question of law, our standard of review is limited to a determination of whether the trial court committed an error of law. *See id.* It is black letter law that a statute cannot be applied retroactively absent the legislature's

*clear intent* that retroactivity is appropriate. 1 Pa.C.S.A. § 1926 (no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly).

*Commonwealth v. Mackert,* 2001 PA Super 219, 222, 781 A.2d 178 (emphasis added).

▆▆▆ ¶ 8 We begin by determining if 42 Pa.C.S. § 9793 is a violation of the *ex post facto* clause. A law will be found to be constitutionally infirm on grounds that it is an *ex post facto* law only when one of the following is present:

Every law that makes an action done before passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798); *see also Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

▆▆▆ ¶ 9 As we recently noted in *Commonwealth v. Davis,* 760 A.2d 406, 410 (Pa.Super.2000) (citations omitted) (quoting *Commonwealth v. Kline,* 695 A.2d 872, 874 (Pa.Super.1997)):

To fall within the *ex post facto* prohibition, a law must be retrospective—that is it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime.

*See also Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); *Commonwealth v. Fisher*, 559 Pa. 558, 741 A.2d 1234 (1999). Nonetheless, the *ex post facto* clause "does not prohibit every retrospective law that alters a party's situation to his disadvantage." *Fisher, supra*, 559 Pa. at 566, 741 A.2d at 1238; *see also Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616 (1999).

¶ 10 The Pennsylvania Supreme Court in *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616 (1999), firmly held that application of the notification requirements of 42 Pa.C.S. § 9793, does *not* violate the *ex post facto* clause. In that case, the defendant pled guilty to, among other things, involuntary deviate intercourse in October 1996. The defendant was sentenced to six to thirty years imprisonment and was subject to the registration requirements of 42 Pa.C.S. § 9793. He challenged the constitutionality of the statute arguing an *ex post facto* violation since he committed the crimes prior to the effective date of section 9793 and that the registration requirement impermissibly changed and inflicted a greater punishment than the law annexed to the crime when committed.

¶ 11 In rejecting the argument that an *ex post facto* violation occurred, our Supreme Court held, "[T]he legislature's actual purpose in enacting the registration provisions was not punishment; rather its purpose was to effectuate, through remedial legislation, the non-punitive goal of public safety." *Id.* at 334, 733 A.2d at 619. Clearly, the statute in the case at bar is constitutional.

■ ¶ 12 We next examine the law of retroactivity.

There is a clear mandate by the legislature against retroactive application of a statute. *See* 1 Pa.C.S.A. § 1926 ("No statute shall be construed to be retroactive unless *clearly and manifestly so*

intended by the General Assembly."). However, "[w]hile there is a presumption against retroactive application of statutes affecting substantive rights, a law is only retroactive in its application when it relates back and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired." *McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360, 1364 (Pa.Super.1992).

*In re R.T., C.A., K.A.*, 2001 PA Super 157, 158, 778 A.2d 670 (emphasis added).

¶ 13 The language of 42 Pa.C.S. § 9793 at first blush appears to have retroactive implications. However, upon further scrutiny, the language of the statute can be interpreted to support both the Commonwealth's and Appellee's positions. Hence, we are faced with an issue of statutory construction. As with any statutory construction question, the rules set forth in the Statutory Construction Act govern. 1 Pa.C.S. §§ 1901–1991. Our task in interpreting 42 Pa.C.S. § 9793 is to ascertain and effectuate the legislature's intent in enacting the provision. 1 Pa.C.S. § 1921(a); *Jones v. Southeastern Pennsylvania Transportation Authority*, 565 Pa. 211, 772 A.2d 435, 442 (2001). In this regard, the section's language and the statutory scheme in which it is found, control. 1 Pa.C.S. § 1921(a)-(b); *Jones, supra; see also Commonwealth v. Pope*, 455 Pa. 384, 317 A.2d 887, 889 (1974).

¶ 14 Our Supreme Court has held the legislative intent of 42 Pa.C.S. § 9793 *et seq.* is as follows:

In gleaning the actual purpose of the Act, it is relevant to examine the declaration of purpose found at Section 9793(b), which provides:

It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of

the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to members of the general public as a means of assuring public protection and shall not be construed as punitive.

42 Pa.C.S. § 9793(b).

*Gaffney, supra,* 557 Pa. at 333, 733 A.2d at 619. In *Gaffney,* our Supreme Court declined to rule on the constitutionality of the notification provisions of Megan's Law. However, the Court explicitly found that the *registration* requirements contained in the statute passed constitutional muster. *Id.* 557 Pa. at 336, 733 A.2d at 620.

■ ¶ 15 In examining the language of 42 Pa.C.S. § 9793, the question arises as to whether the statute applies to all persons who have *formerly* committed an offense which has been deemed to be sexually violent *and* who are or were under the supervision or control of the Board when the Act became effective, regardless of the offense. Clearly, persons who commit these statutorily-delineated offenses on or after the Act's effective date must register. What is not as clear is whether persons who committed these same offenses and *fully served* their sentences for these offenses *prior to* the effective date must register if they later commit a non-Megan's Law-related offense and are once again under the supervision of the Board.

■ ¶ 16 It is a cardinal rule of statutory construction that if the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. § 1921. *Skepton v. Borough of Wilson,* 562 Pa. 344, 349, 755 A.2d 1267, 1270 (2000). When the words of a statute are clear and unambiguous, their plain meaning and common usage are to be applied. 1 Pa.C.S. § 1903(a); *see Commonwealth v. Bybel,* 2001 PA Super 174, 175, 779 A.2d 523. If the statutory language is unclear, only then may the legislative intent be considered. Furthermore, "[I]t is axiomatic that, under the rule of lenity, penal statutes must be strictly construed, with ambiguities being resolved in favor of the accused." *Commonwealth v. Lassiter,* 554 Pa. 586, 593, 722 A.2d 657, 660 (1998). After a careful examination of the language of 42 Pa.C.S. § 9793, we find that the registration provisions are vague since the language does not *clearly* and *unambiguously* define whether the defendant must be under the supervision of the Board for a Megan's Law offense. We agree with the astute opinion of the learned trial court, which opined:

> [The Commonwealth's position is that a person must register if he is] under the jurisdiction of the Department of Corrections for *any* offense and have committed a Megan's Law offense in the past. Under this analysis, a person could have been convicted of, and finished with serving, a Megan's Law offense twenty years before the passage of Megan's Law, and be subject to Megan's Law registration requirements if convicted of a DUI in 1999.
>
> This court does not believe the legislature of the Commonwealth of Pennsylvania intended 42 Pa.C.S.A. § 9793 to apply retroactively to persons who had maxed out on their Megan's Law offenses prior to the effective date of the

Act, such as the Defendant in this instance.

Trial Court Opinion, 10/03/00, at 4–5 (emphasis in original).

¶ 17 We find that if the Legislature intended 42 Pa.C.S. § 9793 to include persons who have been convicted of and who have fully served their sentences for Megan's Law offenses prior to its enactment, the statute would have contained such language. The first sentence of § 9793(a) states, "A person convicted of any of the offenses ... shall be required to ..." The language appears to be in the present tense. Further, the registration requirement under the statute applies only to a period of ten years. Thus, it is difficult to surmise if the Legislature intended, as the Commonwealth suggests, that persons who committed these Megan's Law-related offenses twenty years ago fall within the registration parameters of the statute.

¶ 18 Since any ambiguity of this penal statute is to be construed in favor of the accused, we are constrained to agree with the cogent reasoning of the trial court. There is little doubt that the Legislature clearly wants persons convicted of certain sexually violent offenses to register their addresses with the police upon completion of their confinement or probation. However, the underlying statute does not clearly state whether persons who were convicted in the past and who fully served their sentence for those convictions *before* the statute's enactment must register. Accordingly, we do not find the trial court erred in dismissing the Commonwealth's case. We affirm the order.

■ ¶ 19 The Commonwealth has filed a motion for attorneys' fees pursuant to Pa.R.A.P. 2744 which provides that "an appellate court may award as further costs damages as may be just, including a reasonable counsel fee...". Pa.R.A.P. 2744(1). The Commonwealth asserts that since Appellee filed a motion to quash the Commonwealth's appeal on grounds that were frivolous, i.e., contending the Commonwealth did not file its notice of appeal in a timely fashion when the record demonstrated that it had, this Court should award the Commonwealth reasonable attorneys' fees. The Commonwealth has not demonstrated that Appellee's motion was not filed in good faith since clearly, the record does suggest some confusion with regard to the docket entries. Therefore, we deny the Commonwealth's request.

¶ 20 Order affirmed; motion to quash appeal denied; motion for attorneys' fees denied.