J-S12022-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :   IN THE SUPERIOR COURT OF
                                       :         PENNSYLVANIA
            Appellant          :
                                         :
              v.               :
                                         :
JONATHAN WALKER,              :
                                       :
           Appellee        :   No. 1064 EDA 2013

Appeal from the Order entered March 15, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0014255-2010

BEFORE: FORD ELLIOTT, P.J.E., DONOHUE and JENKINS, JJ.

MEMORANDUM BY DONOHUE, J.:         **FILED SEPTEMBER 26, 2014**

The Commonwealth appeals from the trial court's order entered March 15, 2013 granting Jonathan Walker's ("Walker") oral motion for a new trial on the charges of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1), and robbery, 18 Pa.C.S.A. § 3701(a)(1)(ii). In a Memorandum dated April 8, 2014, we remanded this case to the trial court for the preparation of a supplemental opinion to address the role the medical records of Tabitha King ("King") played in its grant of a new trial. After reviewing the trial court's supplemental opinion, we conclude that the trial court did not err in ordering a new trial.

A brief summary of the relevant factual and procedural history is as follows.[1] On October 1, 2010, Walker attacked King from behind as she ascended the steps from the subway concourse with her three-year-old son. N.T., 3/29/12, at 18. Walker hit King in the right leg with an umbrella and pulled her backwards, causing her to fall down a full flight of concrete stairs. *Id.* at 18-19. During a bench trial on March 29, 2012, King testified that she was taken to the hospital by the police on the night of the attack and was treated for a mild hand and foot sprain resulting from her fall down the stairs. *Id.* at 23. King's medical records from the hospital were admitted into evidence as Exhibit C-1 by way of stipulation, whereby defense counsel specifically noted that the records reflected that King was treated on the day after the incident. *Id.* at 69-71. Walker and the Commonwealth agreed that King did not suffer serious bodily injury. *Id.* at 72, 75-78. Rather, the Commonwealth proceeded on the theory that Walker intended to cause King serious bodily injury.

The trial court issued its verdict, finding Walker guilty of recklessly endangering another person (REAP), aggravated assault, robbery, and possession of an instrument of crime (PIC). Trial Court Opinion, 7/22/13, at 1. Walker's counsel then made an oral motion for extraordinary relief ("the Motion"), claiming that the evidence presented at trial was insufficient for a

---

[1] A more detailed summary of the facts and procedural history is set forth in our previous memorandum. *See Commonwealth v. Walker*, 1064 EDA 2013 (Pa. Super. April 8, 2014) (unpublished memorandum).

conviction of robbery of the first degree and aggravated assault of the first degree because the Commonwealth did not prove that he had specific intent to cause serious bodily injury to King. N.T., 1/17/13, at 5-7. The trial court denied the Motion. *Id.* at 10.

Prior to sentencing, Walker's counsel renewed the Motion, requesting the trial court to revisit the finding of guilt based on "after-discovered evidence" in the medical records that King was not treated at the hospital on the night of the attack, but rather left the hospital and came back the next day to be treated. N.T., 3/15/13, at 4, 6-11. In opposition to Walker's claim of after-discovered evidence, the Commonwealth argued that the information was highlighted in the medical records and further, that all medical records were entered into the record by way of stipulation. *Id.* at 7, 11. The trial court judge stated that he did not review the entirety of the medical record, and if he had, he may have decided the case differently. *Id.* at 6, 15. The trial court then granted a new trial "in the interest of justice" because it "didn't do what [it] was required to do as the fact finder." *Id.* at 14-15.

The Commonwealth timely filed an appeal and herein raises the following issue for our consideration and determination: "Did the lower court err in ordering a new trial, supposedly in the interest of justice, where there was no lawful reason for granting such relief?" Commonwealth's Brief at 3.

Our standard of review of an order granting a new trial in the interest of justice is abuse of discretion. **Commonwealth v. Dorm**, 971 A.2d 1284, 1288 (Pa. Super. 2009). In this context, "[a]n abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, manifest unreasonableness, misapplication of law, partiality, and/or prejudice. **Id.** at 1288-89 (citing **Commonwealth v. Hacker**, 959 A.2d 380, 392 (Pa. Super. 2008)).

As we previously stated, it was undisputed that King did not suffer serious bodily injury. Instead, the Commonwealth's theory of the case focused on Walker's intent to cause serious bodily injury. Thus, the issue before the trial court was whether the Commonwealth satisfied the elements of aggravated assault by proving that Walker **intended** to cause serious bodily injury.

On appeal, the Commonwealth argues that the trial court's review of King's medical records was essentially irrelevant, since it otherwise presented sufficient evidence at trial to sustain Walker's conviction of aggravated assault. Walker, conversely, argues that the review of King's medical records caused the trial court to reconsider King's credibility generally, and thus granted a new trial based upon the weight of the evidence.

In its original opinion, the trial court stated, "Because [Walker] was wrongly convicted of aggravated assault, and that there was a discrepancy

as to what was stipulated to in the victim's medical reports and what was testified to during trial, the court properly granted a new trial, as it was within the discretion of the court to do so under these circumstances." Trial Court Opinion, 7/22/13, at 5. Because the trial court did not provide an explanation of what role King's medical records played in its determination of whether Walker intended to cause serious bodily injury and ultimately, its grant of a new trial, we remanded this case to the trial court for the preparation of a supplemental opinion to address this issue.

The trial court provided further explanation of its decision to grant a new trial in its supplemental opinion, stating:

> Prior to sentencing, defense counsel reiterated his motion for relief to which the court heard brief argument. ***Before the defense made its argument***, the trial court inquired: 'Specifically, at the waiver trial, what was submitted, just medical records?' To which the Commonwealth replied: 'Medical records and photos, if I am not mistaken.' Thereafter, the court inquired as what testimony was admitted into evidence concerning the victim's injuries, to which the Commonwealth replied that the victim sustain[ed] a sprained foot and wrist.
>
> Thereafter, after learning that a discrepancy existed between the testimony taken during trial and the evidence included in the exhibits, the court admitted that it had failed to read all of the information contain[ed] in the exhibits prior to deliberation of the evidence. Because a discrepancy existed concerning the victim's testimony and the evidence admitted in the Commonwealth's exhibits, then the trial court determined that the likelihood was also possible that other discrepancies could have been present in the record as well. As the court knew that it had not

performed its duty as fact-finder properly, this court, in the interest of justice, granted the defendant a new trial. After granting a new trial, the court stated: 'I am giving him a new trial because I didn't do what I was required to do as fact-finder…[t]here were **some things in those records**, had I reviewed, I **might** have decided differently.'

Supplemental Trial Court Opinion, 7/7/14, at 2 (emphasis in original) (internal citations omitted). The trial court also specially noted that the court did not, "as the Commonwealth argues, engage[] in a 'post-trial assessment of the victim's credibility.'" **Id.** at 3.

Rule 704 of the Pennsylvania Rules of Criminal Procedure permits a trial judge to hear an oral motion for extraordinary relief prior to sentencing. Pa.R.Crim.P. 704(B)(1). Rule 704 provides, in pertinent part:

**(B) Oral Motion for Extraordinary Relief.**

(1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial.

(2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.

(3) A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.

**Id.**

The Comment to Rule 704(B) provides that "when there has been an error in the proceedings that would clearly result in the judge's granting

relief post-sentence, the judge should grant a motion for extraordinary relief before sentencing occurs. […] [T]his rule is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential." Pa.R.Crim.P. 704(B), cmt.[2] The Comment further provides the basic purpose of the rule: "when there has been an egregious error in the proceedings, the interests of justice are best served by deciding that issue before sentence is imposed." **Id.**

In **Dorm**, a jury convicted Dorm on charges of statutory sexual assault ("SSA") and involuntary deviate sexual intercourse ("IDSI"). **Dorm**, 971 A.2d at 1287. However, prior to sentencing, the trial court "entertained a motion for extraordinary relief under [Rule] 704(B)" and "granted a new trial on the charges of aged-based IDSI and SSA […]." **Id.** In reaching its determination, the trial court found that the court's instructions to the jury were confusing because the instructions blended the offenses of IDSI and SSA and because the verdict slip included a charge for statutory IDSI, which is not a crime in Pennsylvania. **Id.** at 1286-87. The trial court "opined that the aforementioned errors produced an inherent unfairness because, […] it could not be said that either count – SSA or age-based IDSI – was in fact presented to the jury correctly." **Id.** at 1288. Moreover, the trial court "did

---

[2] As we noted in our previous memorandum, the Commonwealth argued that the trial court committed error in granting a new trial under Rule 704(B). However, the Commonwealth failed to develop its argument or cite to any authority to support its assertion. As a result, we need not address this issue.

not, and could not, know how to proceed with respect to sentencing […] [as] it could not just arbitrarily pick one of [the] offenses, assigning the guilty verdict to it rather than the other." *Id.* The Commonwealth appealed the trial court's grant of a new trial to this Court.

After reviewing the record, we affirmed the trial court's order, holding that "it was not an abuse of discretion for the court to vacate the conviction for the non-existent crime and order a new trial in which proper instructions and a proper verdict slip allow deliberations on the IDSI offense actually lodged against Dorm." *Id.* at 1289. In reaching our conclusion that immediate relief was warranted, we held that "[a] trial court has an 'immemorial right to grant a new trial, whenever, in its opinion, the justice of a particular case so requires.'" *Id.* at 1288 (quoting **Commonwealth v. Powell**, 590 A.2d 1240, 1242 (Pa. 1991)). Moreover, we held that "the court may grant a new trial *sua sponte*." *Id.*

Much like **Dorm**, in the case presently before this Court, the trial court granted a new trial after recognizing an error on its part that produced an inherent unfairness. A review of the trial court's supplemental opinion reveals that the trial court did not reconsider or reweigh the evidence presented at trial, including King's medical records, as the Commonwealth suggests. Rather, the supplemental opinion clarifies that the dialogue prior to sentencing regarding King's medical records exposed a fundamental breakdown in the adjudicatory process, namely, that the trial court "simply

failed to perform its duty as fact-finder in considering all the evidence prior to making its decision as to guilt or innocence, thereby prejudicing the defendant." Supplemental Trial Court Opinion, 7/7/14, at 3.

As this Court has held, "[i]t is the function of the [fact-finder] to evaluate evidence adduced at trial to reach a determination as to the facts …[.]" *Commonwealth v. G.Y.*, 63 A.3d 259, 269-70 (Pa. Super. 2013) (quoting *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. 2003) (internal citation omitted)). Moreover, "[i]t is the role of the fact-finder to determine whether the evidence is believable in whole, in part, or not at all, and to assign weight to the evidence that it believes as it deems appropriate." *Commonwealth v. George*, 878 A.2d 881, 885 (Pa. Super. 2005) (citation omitted). Accordingly, the record reflects that the trial court failed to fulfill its role and function as the fact-finder when it failed to consider the entirety of the record prior to issuing its determination.

"The grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings." *Donoughe v. Lincoln Elec. Co.*, 936 A.2d 52, 67-68 (Pa. Super. 2007). Thus, "[i]f a trial court determines that the process has been unfair or prejudicial, even where the prejudice arises from actions of the court, it may, *sua sponte*, grant a new trial in the interest of justice." *Commonwealth v. Riley*, 643 A.2d

1090, 1093 (Pa. Super. 1994) (citing **Powell**, 590 A.2d at 1243). "The concept of 'in the interest of justice' is merely a recognition of the trial court's discretionary power to ensure the fairness of the proceedings during the adjudicatory stage." **Powell**, 590 A.2d at 1243.

The trial court in this case candidly admitted that the adjudicatory process had been unfair to Walker because of its own failure to read, evaluate, and consider all of the evidence submitted at trial prior to issuing its determination of guilt. The trial court's failure to fulfill its role as the fact-finder resulted in an error in proceedings, which produced inherent unfairness to Walker. As a result, we conclude that the error warranted immediate relief and accordingly, we conclude that the trial court did not abuse its discretion. We will not disturb the trial court's decision to grant a new trial in the interest of justice.

Order affirmed.

Jenkins, J. joins the Memorandum.

Ford Elliott, P.J.E. files a Dissenting Memorandum Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2014